IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| In Re: | : | Chapter 11 |
| --- | --- | --- |
| | : | Case No. 09-21782 (SVK) |
| BULK PETROLEUM CORPORATION, *et al.* | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

**CONSOLIDATED RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTIONS (I) TO SELL REAL PROPERTY KNOWN AS 2905 BROADWAY AVENUE, EVANSVILLE, IN, (II) TO SELL REAL PROPERTY KNOWN AS 11700 N. US HWY. 31, EDINBURGH, IN, AND (III) TO SELL REAL PROPERTY KNOWN AS 2213 BRIDGE STREET, PADUCAH, KY**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors" or "Bulk"), by and through its undersigned counsel, hereby responds to:

A. Debtors' Motion to (i) Sell Real Property Known as 2905 Broadway Avenue, Evansville, In and Related Fixtures and Personal Property (the "Evansville Property") Free and Clear of All Liens and Encumbrances to KMT Inc. or Its Assigns ("KMT"), for $668,728.69, (ii) Approve Rejection of a Lease Between Debtor Entities , (iii) Assume and Assign Debtors' Interest in a Land Contract on the Property to KMT Inc., and (iv) Shorten the Notice Period for Objections to 7 Days [Docket No. 1256] (the "Evansville Sale Motion");

B. Debtors' Motion to (i) Sell Real Property Known as 11700 N. US Hwy. 31, Edinburgh, IN and Related Fixtures and Personal Property (the "Edinburgh Property") Free and Clear of All Liens and Encumbrances to VIP Petroleum, Inc., or Its Assigns ("VIP"), for $710,000, (ii) Approve Rejection of a Lease Between Debtor Entities , (iii) Assume and Assign

Debtors' Interest in a Land Contract on the Property to VIP Petroleum, Inc., and (iv) Shorten the Notice Period for Objections to 7 Days [Docket No. 1257] (the "Edinburgh Sale Motion"); and

C. Debtors' Motion to (i) Sell Real Property Known as 2213 Bridge Street, Paducah, KY and Related Fixtures and Personal Property (the "Paducah Property," and together with the Evansville Property and the Edinburgh Property, the "Three Properties") Free and Clear of All Liens and Encumbrances to Star Fuels, LLC, or Its Assigns ("Star Fuels," and together with KMT and VIP, the "Three Purchasers"), for $817,215.71, (ii) Approve Rejection of a Lease Between Debtor Entities, (iii) Assume and Assign Debtors' Interest in a Land Contract on the Property to Star Fuels, LLC, and (iv) Shorten the Notice Period for Objections to 7 Days [Docket No. 1258] (the "Paducah Sale Motion," and together with the Evansville Sale Motion and the Edinburgh Sale Motion, the "Three Sale Motions").

In support of this consolidated response, the Committee respectfully states as follows:

## PROCEDURAL AND FACTUAL BACKGROUND

1. On February 18, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and are continuing to operate their businesses and manage their properties as debtors-in-possession.

2. On March 9, 2009, the United States Trustee appointed the members[1] of the Committee pursuant to 11 U.S.C. § 1104.

3. On February 17, 2010, the Debtors conducted an auction of certain of their real properties and associated personal property. After the conclusion of the auction, it was

---

[1] The members of the Committee are CITGO Petroleum Corporation, BP Products North America, Inc., Marathon Petroleum Company LLC, and M&M Service Station Equipment Specialists.

determined that Convenience Stores Leasing & Management, LLC ("CSLM") had submitted the highest and best offer for 66 of the Debtors' properties, including the Three Properties.

4. On March 16, 2010, the Court conducted a hearing on the Debtors' request for approval of the sale to CSLM, and following certain supplemental disclosures made by the Debtors, the Court conducted subsequent hearings on April 22, 2010, May 7, 2010 and May 17, 2010 (the "Sale Hearings"). On May 17, 2010, the Court entered an order approving the sale of 66 of the Debtors' properties to CSLM for a price of $11 million [Docket No. 1248] (the "CSLM Sale").

5. Throughout the Sale Hearings, the unequivocal testimony presented by the Debtors and CSLM was that CSLM would have a single closing for the 66 stores and that CSLM had secured the necessary financing to consummate the transaction,. At the May 7, 2010 hearing, the Court cautioned the Debtors' principal, Darshan Dhaliwal, that he was not to assist CSLM in obtaining financing for the CSLM Sale.

6. On May 20, 2010, the Debtors filed the Three Sale Motions, by which they seek to carve out the Three Properties from the CSLM Sale and instead sell those properties to the Three Purchasers at an aggregate price of more than $2 million.

7. The Three Purchasers are the vendees under land sale contracts with the Debtors. At the May 7, 2010 hearing regarding the CSLM Sale, the Debtors disclosed that CSLM would likely "flip" the Three Properties to the Three Purchasers at or after the closing of the CSLM Sale. However, no one disclosed that the Debtors would seek to directly sell the Three Properties to the Three Purchasers in advance of the CSLM Sale.

8. The Debtors requested expedited consideration of the Three Sale Motions so that those sales can close before the closing of the CSLM Sale. The Debtors are also seeking

a reduction in the purchase price to be paid by CSLM if and when it closes on the remaining 63 properties.

### RESPONSE

**A. The Debtors' Estates Will Receive No Additional Benefit from Approval of the Three Sale Motions, Which Have Been Brought Solely for the Benefit of CSLM.**

9. The Debtors offer no explanation for why they are seeking to carve out the Three Properties from the CSLM Sale, and to do so on an expedited basis. The conclusion is unavoidable, however, that the Debtors have brought the Three Sale Motions solely to assist CSLM with obtaining financing for the CSLM Sale. If the Three Sale Motions are granted, CSLM's purchase price for the remaining properties will be reduced from the approved price of $11 million to a price that would now be less than $9 million.

10. The Three Sale Motions appear dangerously close to running afoul of the Court's directive that the Debtors' principal *not* involve himself in CSLM's financing efforts. But worse, the Debtors' estates are needlessly incurring additional attorneys' fees by undertaking these efforts to accelerate the sale of the Three Properties, all for the benefit of CSLM.

11. Since CSLM is already obligated to purchase the Three Properties, and since the Debtors seek a dollar-for-dollar reduction in CSLM's purchase price, the Debtors' estates will realize absolutely no profit from the sale of the Three Properties to the Three Purchasers rather than to CSLM as previously approved.

12. If CSLM had followed the course that was disclosed to the Court on May 7, 2010, *i.e.*, to flip the Three Properties to the Three Purchasers *after* the closing of the CSLM Sale, the Debtors' estates would have avoided all of the attorneys' fees incurred in preparing, filing and prosecuting the Three Sale Motions. In addition, since the Debtors will now be the sellers of the Three Properties, instead of CSLM, the Debtors will incur even more fees in

-4-
#12644682 v3  Case 09-21782-svk    Doc 1265    Filed 05/27/10    Page 4 of 8

connection with the closing of each such sale and will be distracted from closing the primary sale to CSLM.

13. When it was determined that CSLM's bid for the 66 stores was the highest and best, an important factor was that the Debtors would be able to conduct a single closing and thereby avoid the fees that would be incurred in multiple closings.

14. There is simply no reason for the Debtors to sell the Three Properties in advance of the CSLM Sale, other than to assist CSLM in obtaining financing by reducing the amount to be financed. The Debtors' actions thus evidence a continued "behind-the-scenes" effort to act for and on behalf of CSLM.

15. Not only are the Three Sale Motions wasteful of the estates' resources, but they have needlessly consumed the time and focus that are required for the Debtors to ever confirm a plan in these cases. The Committee has made repeated requests for the financial data necessary to assess plan feasibility, but because the Debtors' attention is otherwise occupied in facilitating the CSLM Sale, they have not responded in a timely manner to such requests to supply essential information. As a result, the plan process has been stalled.

### B. The Three Purchasers Have Not Made Any Commitment to Purchase the Three Properties From the Estates.

16. Even if the Three Sale Motions would otherwise benefit the Debtors' estates, they suffer from a serious flaw: As of the time of filing this Response, the Three Purchasers have not entered into any agreement of sale other than their original land sale contracts, none of which obligate the Purchaser to close on a sale in accordance with the terms set forth in the Three Sale Motions.

17. The Three Sale Motions simply set forth a summary of the terms on which the Three Purchasers have "agreed" to purchase the Three Properties. Equally non-binding is the

Debtors' statement that the Purchasers have "agreed" to enter into an exclusive supply contract with Bulk.

18. Absent a binding commitment on the part of the Three Purchasers to purchase the Properties and to enter into a supply contract, the Three Sale Motions should not be granted.

### C. In Any Event, CSLM Should Not Be Released From Its Obligation to Purchase the Three Properties.

19. Even if the Court is inclined to grant the Three Sale Motions, in the event that any of the Three Purchasers fails to go to closing, CSLM should remain obligated to purchase those Properties strictly in accordance with the terms of its existing sale agreement and this Court's May 17 Order.

20. CSLM submitted a "package" bid that included the Three Properties, it foreclosed other bids on those Properties, it entered into a binding agreement to purchase the Three Properties, and it consumed many hours of Court and professional time seeking approval for that sale. If any of the Three Sale Motions is granted, but that Purchaser fails to close, then CSLM should be required to honor its original commitment and close on the Property itself.

21. Moreover, CSLM should explain to the Court why it was necessary at the 11th hour to for the estate to undertake the sale of the Three Properties pursuant to separate section 363 sales and should be ordered to reimburse the estate for all of the additional legal fees incurred as a result.

WHEREFORE, the Committee respectfully requests that the Three Sale Motions be granted only (i) if the Debtors amend the Three Sale Motions to attach binding agreements of sale signed by each of the Three Purchasers, including supply agreements (ii) if CSLM

remains obligated to purchase any of the Three Properties in the event that any of the Three Purchasers fails to consummate its purchase (iii) the CSLM agreement of sale otherwise remains in full force and effect without modification and (iv) CSLM be Ordered to reimburse the estate for all additional legal fees incurred as a result of having to file the Three Sale Motions and undertake four separate closings when only one was contemplated.

Respectfully Submitted,

/s/ Francis J. Lawall
Francis J. Lawall
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4481
Facsimile: (215) 981-4750

*Counsel for the Official Committee of Unsecured Creditors*

Dated: May 27, 2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| In Re: | : | Chapter 11 |
|---|---|---|
| | : | Case No. 09-21782 (SVK) |
| BULK PETROLEUM CORPORATION, *et al.* | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 27, 2010, a copy of the attached Consolidated Response Of Official Committee Of Unsecured Creditors To Debtors' Motions (i) To Sell Real Property Known As 2905 Broadway Avenue, Evansville, IN, (ii) To Sell Real Property Known As 11700 N. US Hwy. 31, Edinburgh, IN, And (iii) To Sell Real Property Known As 2213 Bridge Street, Paducah, KY was served via the Court's CM/ECF system.

> By: /s/ Francis J. Lawall
> Francis J. Lawall
> Pepper Hamilton LLP
> 3000 Two Logan Square
> Eighteenth and Arch Streets
> Philadelphia, PA 19103-2799
> Telephone: (215) 981-4000
> Facsimile: (215) 981-4750
>
> *Counsel for The Official Committee of Unsecured Creditors*

Dated: May 27, 2010