THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: May 27, 2010

Honorable Susan V. Kelley
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

**In the Matters of**

**BULK PETROLEUM CORPORATION,**     Case No. 09-21782-SVK -11
**et al.,**[1]     **Jointly Administered**

         **Debtors.**

**ORDER GRANTING DEBTORS' MOTION TO (i) SELL REAL PROPERTY KNOWN AS 2213 BRIDGE STREET, PADUCAH, KY AND RELATED FIXTURES AND PERSONAL PROPERTY FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES TO STAR FUELS, LLC, OR ITS ASSIGNS, FOR $817,215.71, (ii) APPROVE REJECTION OF A LEASE BETWEEN DEBTOR ENTITIES, (iii) ASSUME AND ASSIGN DEBTORS' INTEREST IN A LAND CONTRACT ON THE PROPERTY TO STAR FUELS, LLC, AND (iv) SHORTEN THE NOTICE PERIOD FOR OBJECTIONS TO 7 DAYS**

---

[1] The Debtors are Bulk Petroleum Corporation, Bulk Petroleum Indiana Properties, LLC, Bulk Petroleum Kentucky Properties, LLC, Charanjeet Illinois Stations No. 6, Inc., Charanjeet's Wisconsin Properties One, LLC, Darshan's Wisconsin Stations Eight, LLC, Gurpal Wisconsin Stations, LLC, Interstate Petroleum Products, Inc., Rakhra Wisconsin E-Z Go Stations Three, Inc., Sartaj's Illinois Nine, LLC, Darshan's Michigan Stations One, Inc., Dhaliwal's Michigan Bulk Stations Two, Inc., Rakhra Michigan E-Z Go Stations Three, Inc., Darshan's Illinois Properties Four, Inc., Dhaliwal Illinois Properties Five, Inc., Jaspal's Illinois Seven, LLC, Sukhi's Illinois Eight, LLC, Darshan's Indiana Stations One, Inc., Dhaliwal's Indiana Bulk Stations Two, Inc., Rakhra Indiana E-Z Go Stations Three, Inc., Darshan's Kansas Stations One, Inc., Darshan's Missouri Stations One, Inc., Darshan's Iowa Stations One, Inc., Dhaliwal Iowa Bulk Stations Two, Inc., Rakhra Iowa E-Z Go Stations Three, Inc., Darshan's Iowa Properties Four, LLC, Dhaliwal Iowa Properties Five, LLC, Darshan's Wisconsin Properties Four, Inc.

Jerome R. Kerkman
Justin M. Mertz
Kerkman & Dunn
757 North Broadway, Suite 300
Milwaukee, WI 53202-3612
Phone: 414. 277.8200
Facsimile: 414.277.0100
Email: jkerkman@kerkmandunn.com

This matter came before the Court on the motion (the "Motion") of Bulk Petroleum Corporation (the "Debtors"), pursuant to § 363(b)(1), (f)(1), (f)(2), (f)(5) and (m) and § 365 of the Bankruptcy Code to (i) approve the sale of an open gasoline station and related real ("Real Property") and personal property ("Personal Property") located at 2213 Bridge Street, Paducah, Kentucky (together, "Property") to Star Fuels, LLC, or its assigns, ("Purchaser") for $817,215.71, (ii) approve the mutual rejection of any lease between the Debtors pursuant to §365(a), (iii) to assume and assign to the Purchaser the Debtors' interest in a land contract with the Purchaser, and (iv) shorten the notice period for objections to 7 days.

The Motion was filed on May 20, 2010 and a hearing on the Motion was held on May 27, 2010. A Consolidated Response of the Official Committee of Unsecured Creditors to Debtors' Motions to (I) To Sell Real Property known as 2905 Broadway Avenue, Evansville, IN, (II) To Sell Real Property known as 11700 N. US Hwy. 31, Edinburgh, IN, and (III) To Sell Real Property Known as 2213 Bridge Street, Paducah, KY (the "Response") was filed on May 27, 2010 as Docket No. 1265. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the order of reference in this district that was entered pursuant to § 157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (N) because it concerns the administration of the Debtors' estates and the sale of property. Having reviewed the Motion and the Response, and heard the arguments of counsel at the hearing, and having been otherwise duly advised,

The Court finds the following:

A.    The Property is subject to the Court's May 17, 2010 Order ("Prior Sale Order") (Docket No. 1248) approving the sale of 66 properties owned by the Debtors and certain of their co-debtors, including the Property, to Convenience Stores Leasing & Management LLC

2

("CSLM").[2] CSLM, Harris N.A., as assignee of the Federal Deposit Insurance Corporation as the Receiver for Amcore Bank, N.A. ("Harris"), and Summit Credit Union f/k/a Great Wisconsin Credit Union ("Summit") have consented to the proposed sale from Debtors to Purchaser for $710,000 as full payment of the land contract on Purchaser's land contract ("Land Contract") with Debtors on the same terms and conditions as the sale to CSLM as approved in the Prior Sale Order, to the extent applicable, provided, however, that Harris's and Summit's consent is conditioned upon Purchaser's agreement to close prior to the CSLM closing approved in the Prior Sale Order.

B. Summit has agreed that the CSLM purchase and sale agreement approved in the Prior Sale Order may be amended by Debtor and CSLM to (i) remove the Property from the list of 66 properties being conveyed to CSLM, (ii) reduce the purchase price due from CSLM under the CSLM purchase agreement by the gross amount paid to Debtors by Purchaser at closing, (iii) provide that Summit shall reduce its allowed secured Claim, as that term is defined by § 101(5) of the Bankruptcy Code, against the Debtors by the amount of the sales proceeds that Summit receives from the sale of the Real Property to Purchaser, and (iv) provide that Bulk will enter into a direct supply contract with Purchaser unless Purchaser has an existing contract with another fuel supplier. In no event shall the sale of real property encumbered by first liens in favor of Harris reduce the amount due Summit under the CSLM purchase agreement.

C. Notice of the Motion was proper and sufficient pursuant to §§ 363 and 365 of the Bankruptcy Code, Fed. R. Bankr. P. 2002, 6004 and 6006, and the Order on Debtor's Motion To Establish Certain Notice Procedures entered by the Court on May 26, 2009 as Docket No. 271. The parties listed on the attached Exhibit B received notice of the Motion

---

[2] *See* Exhibit A to the 66 Site Motion for a list of the 66 properties and their respective co-debtor owners.

by first class mail or ECF. The shortened period for notice of the Motion (from 21 to 7 days) was made for good cause shown (specifically, to expedite the sale of the Property so that it closes prior to the CSLM closing, as required by Harris and Summit) and was sufficient under the circumstances. The rights of interested parties were not prejudiced by the shortened notice period.

        D.        The Court's findings in Paragraphs E, F and G of the Prior Sale Order regarding the marketing and auction of the 66 properties are incorporated herein. An individual bid of $720,000 for the Property was submitted at the auction. The bid required rejection of the existing land contract and did not include a gasoline supply agreement with Bulk. The Court accordingly finds that the sale to the Purchaser on the terms set forth in the Motion constitutes the highest and best offer for the Property, and the $710,000 purchase price is fair and reasonable.

        E.        The sale is not part of an unauthorized or *sub rosa* plan of reorganization and is in full compliance with, and does not violate the terms and conditions of, the Order Establishing Auction Procedures entered by the Court on December 29, 2009 as Docket No. 842.

        F.        The Land Contract and sale transaction was negotiated, proposed and entered into by the Debtors and Purchaser without collusion, in good faith and from arm's-length bargaining positions. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be voided under § 363(n) of the Bankruptcy Code.

4

G.  The Purchaser is a good faith purchaser for value and entitled to the protections of § 363(m). Notice of the request for such protections was given to interested parties.

H.  The Debtors have the requisite authority and power to consummate the sale, and their sole managing member, Darshan Dhaliwal, has approved the sale.

I.  The Debtors have sound business reasons for selling the Property directly to the Purchaser and such sale is in the best interests of the Debtors' estates. A direct sale of the Property by Debtors to Purchaser will expedite the sale of the Property as well as the sale of the other properties covered by the Prior Sale Order. As disclosed at the April 22, 2010 hearing, CSLM intended to sell the Property to the Purchaser immediately upon closing with the Debtors to help finance its acquisition of the other properties covered by the Prior Sale Order.

J.  The requirements of § 363(f)(1), (2) and (5) have been met so that the sale shall be free and clear of interests in the Property as provided for in this Order.

K.  The requirements of § 365(a) have been met and the rejection of the executory contracts and unexpired leases between the Debtors as provided for in this Order are in the best interests of the Debtors' estates.

L.  It is in the best interests of the Debtors and their estates to close expeditiously and waive the stay pursuant to Rule 6004(h).

Based on the Motion, the related documents, the findings in this Order and those stated at the hearing, and good cause existing for granting the Motion,

IT IS ORDERED that:

1.  The Motion is granted.

2.  The Debtors are authorized to sell the Real Property and Personal Property

5

Case 09-21782-svk    Doc 1270    Filed 05/27/10    Page 5 of 15

located at 2213 Bridge Street, Paducah, Kentucky, to the Purchaser for $817,215.71, plus any applicable per diem interest charge, pursuant to the Motion. The legal description for the Real Property is attached as Exhibit A. The Debtors are authorized to take such actions as may be reasonably necessary to complete the sale to the Purchaser.

3. Darshan Dhaliwal is authorized and directed to execute all documents on behalf of the Debtors to consummate the sale of the Property to the Purchaser.

4. The Debtors are authorized to execute any releases, reconveyances, termination statements, assignments, consents or instruments on behalf of any third party, including the holders of any liens, claims or interests of Affected Interests (defined below) that are necessary or appropriate to effectuate or consummate the sale. The foregoing notwithstanding, the provisions of this Order shall be self-executing, and notwithstanding the failure of the Debtors, the Purchaser or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the sale and conveyance to Purchaser, all Encumbrances Affected Interests shall be deemed divested, released and terminated.

5. The Debtors will quitclaim their interest in the Real Property to the Purchaser "as is, where is," without any warranties or representations.

6. Bulk will quitclaim its interest in the Personal Property to the Purchaser via a Bill of Sale on an "as is, where is" basis without any warranties or representations.

7. The Debtors will assign their vendor's interest in the Land Contract to the Purchaser at closing on an "as is, where is" basis, without any warranties or representations.

8. Pursuant to § 363(f) of the Bankruptcy Code, effective on the closing of the sale, the sale and conveyance of the Property will vest in the Purchaser all right, title and interest of

the Debtors and their bankruptcy estates in the Property, free and clear of the liens, Claims (as defined in the Bankruptcy Code) and interests including those specifically those listed below (collectively, the "Affected Interests"):

    (a)    The interest of Summit pursuant to its mortgage recorded with the Register of Deeds for McCracken County, Kentucky as Mortgage Book 1112, Page 122;

    (b)    The interest of Summit pursuant to its assignment of rents and leases recorded with the Register of Deeds for McCracken County, Kentucky as Deed Book 1112, Page 703;

    (c)    The interest of Summit in the Property pursuant to its security agreements and recorded financing statements filed with the Register of Deeds for McCracken County, Kentucky as Fixture Filing Book 5, Page 553;

    (d)    The interest of Harris in the Personal Property located at the Real Property pursuant to its security agreements and recorded financing statements;

    (e)    The interest of McCracken County pursuant to various tax liens of record; and

    (f)    The interest of the Debtors in the Property.

The liens, claims and interests of the holders of the Affected Interests shall attach to the proceeds of the sale with the same force, effect, validity and priority that previously existed against the Property.

9.    This Order is and shall be effective as a determination that, upon and subject to the occurrence of the closing of the sale, all Affected Interests have been and hereby are adjudged and declared to be unconditionally released and extinguished as to the Property, and

holders of the Affected Interests are barred from asserting their Affected liens, claims, and interests against the Property, the Purchaser, and their successors and assigns.

10. The Debtors reject any leases between them for the Property. Except for the Co-Debtor's claims for rent due by Bulk, the Debtors waive any pre- or post-petition claims against each other as a result of their rejections of the leases, including without limitation, reimbursement for any adequate protection payments made to Summit and Harris. Bulk waives its rights under § 365(h)(1) of the Bankruptcy Code as to the Property.

11. The sale may be modified, amended, or supplemented by the parties without further order of the Court, provided that such modification, amendment, or supplement does not have a material adverse effect on the Debtors' bankruptcy estates.

12. Because there was no objection to the Motion and the Debtors have shown cause to exempt the sale of the Property from the stay imposed under Fed. R. Bankr. P. 6004(h), the stay is waived. This Order is effective immediately upon entry. No automatic stay of execution, pursuant to Fed. R. Civ. P. 62(a), as may be applicable pursuant to Fed. R. Bankr. P. 7062, or Fed. R. Bankr. P. 6004(h) or 6006(d), applies to this Order.

13. The Purchaser waives any and all rights and claims against the Debtors, Summit, and Harris pertaining to any environmental liability or pursuant to any environmental law, including, without limitation, any claim alleged under CERCLA.

14. Upon closing, (i) Summit and Harris shall release the Property from any mortgages, liens, and security interests they hold against the Property, (ii) Summit and shall reduce its allowed secured Claim, as that term is defined by § 101(5) of the Bankruptcy Code, against the Debtors and the Debtors' related chapter 11 entities, by the amount of the sales proceeds that Summit receives from the sale of the Real Property; and (iii) Harris shall reduce its

allowed secured Claim, as that term is defined by § 101(5) of the Bankruptcy Code, against the Debtors and the Debtors' related chapter 11 entities, by the amount of the sales proceeds that Harris actually receives from the sale of the Personal Property, if any.

15. The Debtors, and any escrow agent upon the Debtor's written instruction, are authorized to make such disbursements on or after the closing of the sale as are required by the Court's Order (Docket No. 713) approving the Stipulation Regarding Distribution of Proceeds of Asset Sales (the "Stipulation") (Docket No. 597) and as agreed upon between the parties. In accordance with the foregoing, proceeds of the sale shall be distributed at closing as follows:

> (a) 5% of the proceeds of the sale related to the Real Property after payment of closing and other costs necessary to deliver clean title to the buyer and pay any broker's fee or commission ("Net Proceeds" as defined in Paragraph 4 of the Stipulation) will be deposited at closing into an escrow account held by Debtors' counsel, Kerkman & Dunn, at closing. These funds shall be used to fund the Carve-Out (as defined in the Stipulation).
>
> (b) Pursuant to the Real Estate Consulting and Advisory Services Agreement ("Hilco Agreement") approved by an order of this Court (Docket No. 521), Hilco shall be paid a fee equal to 5% of the Gross Proceeds of the sale of the Personal and Real Property. "Gross Proceeds" means the total amount of (i) cash paid by the buyer(s) of the Property for all cash deals, (ii) the amount of secured debt credit bid for the Property, and (iii) the cash plus the amount of secured debt credit bid to the extent the purchase price exceeds the secure debt. The payment to Hilco shall be made to Hilco Real Estate, LLC. Any amount due Marcus & Millichap will be

9

paid by Hilco Real Estate, LLC.

(c) Delinquent real and personal taxes, utilities, municipal charges and special assessments shall be paid out of the proceeds at closing. Taxes, utilities, and special assessments attributable to the Real Property shall be paid out of the Real Property proceeds, and taxes, utilities, and special assessments attributable to the Personal Property shall be paid out of the Personal Property proceeds. Current real and personal property taxes, utilities, and special assessments shall be prorated as of the closing date and those attributed to the Debtors' ownership shall be credited to the Purchaser. However, to the extent that the Purchaser was obligated to pay taxes pursuant to the Land Contract and failed to remit such amounts, such unpaid amounts shall be paid by the Purchaser at closing.

(d) After payment of the amounts specified in section 15(a) through (c) of this Order, the balance of the proceeds of the Real Property shall be disbursed to Summit.

(e) The portion of the sale proceeds to be allocated to the Personal Property shall be 7.5%, which amount shall be deposited with Debtors' counsel, Kerkman & Dunn, to be held in its client trust account. The personal property escrow shall be held until a determination is made by court order or agreement between the parties of the amount of the Purchase Price to be allocated to the Personal Property for purposes of the Stipulation Regarding Distribution of Proceeds of Asset Sales (the "Stipulation," Docket No. 597) as approved by the Court's Order entered as Docket No.

713. The 7.5% personal property allocation shall have no evidentiary value, shall be given no weight, shall not be an admission by any party and shall not be considered by the Court in determining the value of the Personal Property for purposes of the amount of the Purchase Price to be allocated to Personal Property for purposes of the Stipulation. After payment of the amounts specified in 15(b) and (c) of this Order, proceeds allocated to Personal Property shall be deposited with Debtors' counsel, Kerkman & Dunn, to be held in escrow.

16. The costs of title work and insurance, transfer taxes, and the survey and Phase I provided by Summit (including the Environmental Data Resources fee of $250 per property)), recording fees, and all other incidental closing costs shall be added to the purchase price and paid by the Purchaser at closing.

17. Except as specifically provided in Section 15, above, all other holders of Affected Interests shall receive nothing from the proceeds of the sale and shall forever be discharged from any interest in the Property. However, they may constitute a claim against the Debtors, and the Court makes no finding or determination of that claim except that it is not a secured claim as a result of a lien against the Property.

18. The Bulk Supply Agreement described in the Prior Sale Order is an integral part of the sale transaction, and Bulk is authorized to enter into the Bulk Supply Agreement with Purchaser.

19. The Debtors retain the rights to collect all amounts due from Purchaser pursuant to the Land Contract first arising or pertaining to the period prior to the closing date.

20. In accordance with the protections of § 363(m), the reversal or modification on
11

appeal of this Order will not affect the validity of the sale to the Purchaser unless, prior to the closing of the sale, an order is entered staying the sale pending appeal.

21. If, for any reason, the sale to Purchaser approved hereunder does not close on or before the closing of the sale to CSLM approved in the Prior Sale Order, the obligation to purchase the Property will revert to CSLM on the terms and conditions approved in the Prior Sale Order. All other terms and conditions of the Prior Sale Order, except as specifically amended by this Order, remain in full force and effect.

22. CSLM shall pay the cost of attorneys' fees and expenses incurred by Debtors to prepare and file the Motion and this Order, to negotiate sale terms and documents related thereto, and to attend the hearing on the Motion.

23. The Court retains jurisdiction to interpret, implement, and enforce the provisions of the sale transaction documents and this Order and to resolve any dispute arising from, in connection with, or related to the sale of the Property and all instruments executed in connection therewith.

24. The provisions of this Order are non-severable and mutually dependent.

#####

# Exhibit A

## LEGAL DESCRIPTION

A certain parcel of land located at 2213-2215 Bridge Street, Paducah, McCracken County, Kentucky, and more particularly described as follows:

Beginning at a point in the right-of-way line of Bridge Street, approximately 415.3 feet from the West right-of-way line of Husband's Road, and a corner to William Pugh; thence leaving the right-of-way line of Bridge Street and with the property line of William Pugh along a corrugated metal privacy fence in the property line, South 50 degrees 52 minutes 14 seconds West 415.00 feet to a point in the right-of-way line of the ICRR tipple track; thence with the right-of-way line of the ICRR tipple track, North 5 degrees 40 minutes 27 seconds West 257.38 feet to a point, a corner to Pat and Dana Halvorson; thence leaving the right-of-way line of the ICRR tipple track and with the property line of Pat and Dana Halvorson, North 55 degrees 48 minutes 58 seconds East 272.46 feet to a point in the right-of-way line of Bridge Street; thence with the right-of-way line of Bridge Street, South 42 degrees 00 minutes 00 seconds East 95.88 feet, South 37 degrees 14 minutes 41 seconds East 95.54 feet to the point of beginning.

Being the same property acquired by BULK PETROLEUM CORPORATION, by Deed dated December 15, 2006, of record in Deed Book 1115, Page 582, in the Office of the Clerk of McCracken County, Kentucky, which is subject to a Contract for Deed in favor of Star Fuels, LLC, dated January 9, 2007, and recorded in Deed Book 1113, Page 415, in the Office aforesaid.

Map # 113-40-06-008
Assessment: $1,050,000.00
2009 City of Paducah real estate taxes have been paid.

# EXHIBIT B

## (Motion Service List)

### *Certificate of Service*

The undersigned certifies that on May 20, 2010 he filed the preceding pleadings via the Court's ECF electronic filing system, and upon belief, the same were served on interested parties in this case. A copy was also sent, as detailed below, to the following parties, who may have an interest in the matter:

| Entity/Individual | Relationship/Claim | Amount, if known |
|---|---|---|
| Star Fuels LLC<br>2213 Bridge St.<br>Paducah, KY 42003 | Purchaser under § 363 | $817,215.71 |
| Unknown Occupant<br>2213 Bridge St.<br>Paducah, KY 42003 | Potential possessory interest | N/A |
| Star Fuels LLC<br>2213 Bridge St.<br>Paducah, KY 42003 | Potential Land Contract Vendee interest | N/A |
| BLS<br>via ECF notification | December 29, 2006 Mortgage against Bulk Petroleum Corp. | $15,000,000 |
| BLS<br>via ECF notification | Assignment of Leases and Rents dated December 29, 2009 from Bulk Petroleum Corp. | N/A |
| McCracken County Treasurer<br>301 South 6th Street<br>Paducah, KY 42003 | Unpaid Taxes | $unknown |
| Amcore Bank<br>via ECF | Subordination Agreement Personal Property | |
| Lawyers' Title<br>Via email to Allen Brown<br>(abrown@ltic.com) | | |

Dated: May 20, 2010

/s/ Justin M. Mertz

Justin M. Mertz
Kerkman & Dunn

Attorneys for the Debtors